**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATHY MARIE MERTZ,** | : | **Civil No.  1:22-CV-223** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

The Supreme Court has underscored for us the limited scope of our

substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Kathy Mertz applied for disability and disability insurance benefits under Title II of the Social Security Act on August 13, 2020, alleging an onset date of disability of July 16, 2020. A hearing was held before an Administrative Law Judge ("ALJ"), and the ALJ found that Mertz was not disabled during the relevant period and denied her application for benefits. Mertz now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.

However, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.   **Statement of Facts and of the Case**

Mertz filed her claim for disability benefits on August 13, 2020, alleging an onset date of July 16, 2020. (Tr. 10). Mertz alleged disability due to the following impairments: COPD, anxiety disorder, bipolar, herniated disc, back problems, degenerative disc disease, high blood pressure, acid reflux, and ulcerative colitis. (Tr. 67). She was 48 years old at the time of her alleged onset of disability, had at

2

least a high school education, and had past relevant work experience as a mail clerk and order picker. (Tr. 20).

With respect to Mertz's impairments,[1] the medical record revealed the following: prior to her alleged onset of disability, Mertz treated for her COPD. Thus, in May of 2018, Mertz was seen by her treating physician, Dr. Joseph McGinley, D.O., for her COPD. (Tr. 625). A review of her symptoms was negative for shortness of breath, wheezing, and chest pains. (Id.) It was noted that Mertz was a smoker, and she had reduced her smoking to about a half of a pack of cigarettes per day. (Id.) She reported her breathing was better with her use of an inhaler 2 to 3 times per day. (Id.) On physical examination, Mertz exhibited normal breath and effort, no respiratory distress, and no wheezing or rales. (Tr. 626). In July of 2018, Dr. McGinley noted that Mertz had still not quit smoking, but that she was started on Advair which helped her breathing and reduced her need for her rescue inhaler. (Tr. 623). A physical examination revealed a normal effort and breath, no respiratory distress, no wheezes, and no rales. (Tr. 624).

In November of 2018, Mertz presented to the emergency room at St. Luke's Hospital complaining of shortness of breath and a cough. (Tr. 598). A physical

---

[1] Mertz's appeal primarily focuses on the ALJ's treatment of her COPD and back pain. Accordingly, we will limit our discussion to the records regarding her treatment for those impairments.

3

examination revealed that Mertz was in mild respiratory distress, had no decreased breath sounds but had wheezes and exhibited tenderness. (Tr. 600-01). A CT scan of Mertz's abdomen and pelvis was ordered, and the results indicated no pulmonary embolism, mild emphysema, and several small pulmonary nodules that were unchanged since April of 2018. (Tr. 419, 603). After a nebulizer treatment was administered, Mertz reported a mild improvement of her symptoms and was in no respiratory distress. (Tr. 604-05). After she was discharged from the hospital, Mertz followed up with Dr. McGinley. (Tr. 597). Mertz reported that she continued to smoke and experience shortness of breath, and her shortness of breath worsened with heavy exertion. (Id.) On examination, she exhibited wheezing but was in no respiratory distress. (Id.)

Mertz saw Dr. McGinley in January of 2019, during which time Mertz reported she was doing "80%" better since her last visit. (Tr. 592). She further reported that she reduced her smoking from one pack per day to about 3/4 pack per day. (Id.) On physical examination, she had no wheezes and was in no respiratory distress, and her breath and effort were normal. (Tr. 593). Mertz exhibited similar findings during a February 2019 examination. (Tr. 701).

Treatment notes from the Occupational Therapy department at St. Luke's in January of 2020 indicate that Mertz had suffered a shoulder injury after a fall. (Tr.

355). It was noted that she had been moving boxes around at work which sometimes weighed up to 50 pounds, and that she did a lot of overhead lifting. (Id.)  In February of 2020, Mertz presented at the emergency room at St. Luke's Hospital complaining of a cough and body aches. (Tr. 506). She denied chest pains or shortness of breath. (Id.) On examination, she had wheezes, but her effort was normal and she was not in respiratory distress. (Tr. 509). Her musculoskeletal examination revealed normal range of motion and no edema or tenderness. (Id.) Her oxygen levels were measured, and she reported that her wheezing had improved and "[her] breathing was fine." (Tr. 510).

Mertz again reported to St. Luke's Hospital in June of 2020 complaining of shortness of breath. (Tr. 487). It was noted that she had a history of COPD and that she continued to smoke 2 packs of cigarettes per day. (Tr. 488). On physical examination, Mertz exhibited wheezing but no respiratory distress and no decreased breath sounds. (Tr. 490). She had normal musculoskeletal range of motion with no edema or tenderness. (Id.) An X-ray of her chest revealed no acute cardiopulmonary disease. (Tr. 445, 492).

Mertz was referred to Lehigh Gastroenterology Associates in July of 2020 for her history of ulcerative colitis. (Tr. 447). Her history of COPD was noted, as well as her chronic smoking. (Tr. 448). At a July 2020 follow up with Dr. McGinley,

Mertz reported shortness of breath, but on examination she was in no respiratory distress and had no wheezes. (Tr. 461-62). Mertz treated with Dr. Mohamed Turki, M.D., in September 2020 on referral from Dr. McGinley after an abnormal CT scan of her chest. (Tr. 1240). It was noted that Mertz indicated she would not quit smoking, and she was advised that her breathing would continue to worsen. (Tr. 1241). Mertz underwent a pulmonary function test ("PFT"). (Tr. 1244, 1266). Her forced vital capacity ("FVC") measured at 1.42L, 46% predicted, and her forced expiratory volume in one second ("$FEV_1$") measured at 0.90 L, 38% predicted. (Tr. 1244-45). The interpretation of this result was severe obstructive airflow defect, increased lung volumes indicative or air trapping, and mildly reduced diffusion capacity. (Tr. 1245).

In December of 2020, Mertz followed up with Pulmonary Associates to review the results of the September PFT. (Tr. 1235). It was noted that her results indicated severe COPD, and it was recommended that she switch her medications. (Id.) She presented with mild exacerbation of her COPD, and she was prescribed prednisone and encouraged to use her nebulizer more frequently. (Id.) At this visit, Mertz indicated that she had increased wheezing over the last several days, and that she had recently lost her job. (Tr. 1236). She also reported that she had no desire to quit smoking at that time. (Id.) On examination, her pulmonary effort was normal

and she was in no respiratory distress, but she did exhibit wheezing. (Tr. 1237-38). She had no swelling, tenderness, or deformity, and had normal range of motion. (Tr. 1238).

Mertz underwent a second PFT in March of 2021. (Tr. 1343). It was noted that Mertz was cooperative and gave a good effort, but that she was short of breath after every trial and light-headed after the fifth trial. (Id.) The results of this PFT indicated that Mertz's FVC was 2.10 L at her best pre-bronchodilator[2] and 2.36 L at her best post-bronchodilator, and her $FEV_1$ measured at 1.33 L at her best pre-bronchodilator and 1.67 L at her best post-bronchodilator. (Id.) Further examination was recommended given the finding of a severe obstruction pre-bronchodilator and probable restriction after. (Id.)

Around this same time, Mertz underwent an internal medicine examination with Dr. Ziba Monfared, M.D. (Tr. 1339-50). Mertz reported using inhalers twice per day for her COPD. (Tr. 1339). Her reported activities of daily living included

---

[2] A bronchodilator test "is a method for measuring the changes in lung capacity after inhaling a short-acting bronchodilator drug that dilates the airways. When an obstructive ventilatory defect is observed, this test helps to diagnose and evaluate asthma and COPD by measuring reversibility induced by the bronchodilator." National Library of Medicine, National Center for Biotechnology Information, *Spirometry and Bronchodilator Test*, published online March 31, 2017, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5392482/ (accessed February 14, 2023).

driving; cooking, cleaning, and doing laundry once per week; taking care of her personal grooming; watching television; and going out to eat. (Tr. 1340). On examination, Mertz had a normal gait but had some balance issues; there was no abnormality in her thoracic spine, and her straight leg raise testing was negative bilaterally; her strength was 5/5 in her upper and lower extremities; and her grip strength was 5/5 bilaterally. (Tr. 1341-42). Dr. Monfared also noted a history of back pain. (Tr. 1339). Dr. Monfared opined that Mertz could sit for 8 hours and stand and walk for 4 hours in an 8-hour workday; she could frequently reach, handle, finger, feel, and push/pull; she could occasionally climb stairs and ramps, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl; and she could occasionally be exposed to unprotected heights, humidity and wetness, extreme heat and cold, and dust, odors, fumes, and pulmonary irritants. (Tr. 1346-49).

About a month later, Mertz was seen in the emergency room in April of 2021 complaining of back pain after trying to move her laundry from the washer to the dryer. (Tr. 1656). She complained of pain radiating to her left leg. (Tr. 1658). A physical examination revealed no shortness of breath or chest pains, tenderness in her lower back with pain and spasms, and an antalgic gait but normal range of motion. (Tr. 1658-59). An X-ray of her lumbar spine at this time revealed no acute fracture or deformity. (Tr. 1660). In July of 2021, Mertz denied shortness of breath

and wheezing, although she exhibited wheezing during a physical examination, and it was noted that she takes medication for her COPD and she continued to smoke 2 packs of cigarettes per day. (Tr. 1868-70). Treatment notes from this time indicate that Mertz reported being completely independent in her activities of daily living and ambulation. (Tr. 1895).

With respect to her back pain, the medical records reveal that Mertz rarely reported back pain, and it was only noted on a handful of occasions that she had chronic back pain. Indeed, physical examinations from before and during the relevant period consistently reported no back pain on physical examinations. (Tr. 498, 538-39, 627, 1709, 1873). There are, however, a few sporadic treatment notes that reference Mertz's lower back pain, including her emergency room visit in April of 2021 where she reported injuring her back doing laundry. (Tr. 621, 631, 1651, 1854, 1889-90). An X-ray of the lumbar spine in April of 2021 showed minimal degenerative changes. (Tr. 1668).

Dr. McGinley filled out a physical assessment form regarding Mertz's impairments in August of 2021. (Tr. 1944-45). On this form, Dr. McGinley opined that Mertz would need to lie down or recline during the workday; could only walk half of a block at a time without rest or pain; could sit, stand, and walk zero hours in an 8-hour workday; would need to take continuous unscheduled breaks during the

workday; could never lift any weight; was limited in her grasping, reaching, and fine manipulation; and that she would be absent from work more than 4 times per month. (Id.)

It is against this medical backdrop that the ALJ held a telephonic hearing on Mertz's claim on August 16, 2021. (Tr. 38-65). At the hearing, both Mertz and a Vocational Expert testified. (Id.) By a decision dated September 13, 2021, the ALJ denied Mertz's application for benefits. (Tr. 10-22).

In that decision, the ALJ first concluded that Mertz met the insured status requirements under the Act through December 31, 2025, and she had not engaged in any substantial gainful activity since her alleged onset date of July 16, 2020. (Tr. 12).  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Mertz had the following severe impairments: COPD, anxiety disorder, depression, bipolar disorder, herniated disc, and degenerative disc disease of the lumbar spine. (Tr. 13). At Step 3, the ALJ determined that Mertz did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-15). Specifically, the ALJ considered listing 3.02 regarding chronic respiratory disorders, but found that Mertz did not meet the requirements of this listing. (Tr. 14).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Mertz's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations. The claimant should avoid unprotected heights and climbing on ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can tolerate occasional exposure to temperature extremes, humidity, and environmental irritants. The claimant is able to understand, retain, and carry out detailed but not complex tasks. The claimant is limited to occasionally decision-making. The claimant should be afforded the ability to alternate between sitting and standing every 30 minutes.

(Tr. 16).

Specifically, in making the RFC determination, the ALJ considered the medical evidence, medical opinions, and Mertz's testimony regarding her impairments. On this score, the ALJ considered the opinions of the state agency consulting sources, Dr. David Hutz, M.D., and Dr. David Clark, M.D. Dr. Hutz opined in November of 2020 that Mertz could perform a range of medium exertional work, in that she could lift and carry 50 pounds occasionally and 25 pounds frequently; could sit, stand, and walk for 6 hours in an 8-hour workday; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme heat and cold, humidity, hazards, and fumes, odors, dusts, and gases. (Tr.

11

76-76). On reconsideration in March of 2021, Dr. Clark found that Mertz could perform a range of light work, in that she could lift and carry up to 20 pounds occasionally and 10 pounds frequently; could sit, stand, and walk for 6 hours in an 8-hour workday; and she could occasionally climb stairs and ramps but never ladders, ropes, or scaffolds. (Tr. 95-100). Dr. Clark opined that Mertz was limited to light work rather than medium work based upon medical evidence in the record of changing conditions between November of 2020 and March of 2021. (Tr. 99-100).

The ALJ found Dr. Clark's opinion generally persuasive, reasoning that the limitation to light work accounted for Mertz's lower back pain, and that Dr. Hutz's opinion on this score was less than persuasive. (Tr. 18-19). In the same vein, the ALJ found Dr. Monfared's opinion to be less than persuasive as the ALJ determined Mertz would be limited to work at the light exertional level. (Tr. 19). Finally, the ALJ considered Dr. McGinley's 2021 opinion and found this opinion unpersuasive. On this score, the ALJ noted that Dr. McGinley's opinion was a checkbox form with no further explanation of the extreme limitations noted therein. (Id.) The ALJ reasoned that this opinion, which set forth extreme, work-preclusive limitations, was inconsistent with the medical records, as the medical records contained sparse evidence of treatment for Mertz's COPD and lower back pain. (Id.)

12

The ALJ also considered Mertz's testimony but ultimately found that Mertz's complaints were not entirely consistent with the medical evidence of record. (Tr. 16-18). Mertz testified that she had a hard time sitting for long periods of time because her legs go numb, and that she experienced pain down through the backs of her legs. (Tr. 49). She stated that walking bothered her, and that she had to stop and take breaks. (Tr. 49-50). She reported that she could sit for about 30 minutes at a time, stand for roughly 15 minutes, and walk for roughly 15 minutes. (Tr. 51). Mertz further testified that humidity, extreme temperatures, and fumes and odors triggered her COPD and took her breath away. (Tr. 50).

The ALJ ultimately found that Mertz's complaints were not entirely consistent with the medical record. On this score, the ALJ noted the plaintiff's history of COPD and the pulmonary function tests, but further noted Mertz's continued refusal to quit smoking. (Tr. 17). The ALJ also pointed to the physical examination findings during the relevant period which showed normal pulmonary effort and no respiratory distress, despite some wheezing. (Id.) The ALJ also considered Mertz's activities of daily living, which included taking care of pets, making sandwiches, doing household chores, driving a car, shopping in stores, and spending time with her husband. (Tr. 18).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Mertz could not perform her past relevant work but ultimately found at Step 5 that Mertz could perform work available in the national economy as an office helper, marker, and a cashier. (Tr. 20-21). Accordingly, the ALJ concluded that Mertz did not meet the stringent standard for disability set by the Act and denied her claim. (Tr. 21-22).

This appeal followed. (Doc. 1). On appeal, Mertz contends that the ALJ erred in his assessment of Dr. McGinley's medical opinion. She further asserts that she meets the requirements of Listing 3.02, and thus, the ALJ should have found her *per se* disabled at Step 3. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

14

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial

evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.**     <u>**Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

18

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F.3d 429, 433 (3d Cir. 1999).

## C.    <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in August of 2020 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However,

in March of 2017, the Commissioner's regulations governing medical opinions

changed in a number of fundamental ways. The range of opinions that ALJs were

enjoined to consider were broadened substantially, and the approach to evaluating

opinions was changed from a hierarchical form of review to a more holistic analysis.

As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." Revisions to Rules
> Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to

23

"supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D.   Legal Benchmarks Governing Step 3 of This Sequential Analysis

This dichotomy between the Act's deferential standard of review and

caselaw's requirement that ALJs sufficiently articulate their findings to permit

meaningful judicial review is particularly acute at Step 3 of this disability evaluation

process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this Step 3 disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. §416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

26

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under Step 3, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An ALJ is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F.Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014). However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a

remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. Burnett, 220 F.3d at 119.

### E.      The ALJ's Decision is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Mertz was not disabled. Therefore, we will affirm this decision.

Mertz first contends that the ALJ erred in his assessment of the opinion of Dr. McGinley, Mertz's treating physician. At the outset, we note that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence, "[a]n ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." Durden,

28

191 F.Supp.3d at 455. Finally, when there is no evidence of any credible medical opinion supporting a claimant's allegations of disability it is also well settled that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

Here, the ALJ considered the opinion of Dr. McGinley and found the opinion unpersuasive. The ALJ first noted that the opinion was rendered in the form of a checkbox form with no explanation as to the extreme limitations set forth in the opinion. See Hevner v. Comm'r of Soc. Sec., 675 F. App'x 182, 184 (3d Cir. 2017) ("[A]s we have said before, 'check box' forms that require little or no explanation . . . are 'weak evidence at best' in the disability context") (quoting Mason, 994 F.3d at 1065)). The ALJ further reasoned that this opinion, which found extreme and work-preclusive limitations, was not supported by or consistent with the claimant's medical records. The ALJ noted that the medical records contained scant evidence of treatment for COPD and back pain. Indeed, as we have noted, the majority of the plaintiff's records indicated that she did not have back pain on examination during the relevant period. Moreover, as the ALJ pointed out, while Mertz struggled with ongoing breathing issues due to her COPD, she was a chronic smoker and refused to quit smoking. In addition, her examinations frequently revealed normal pulmonary effort, no decreased breathing sounds, no respiratory distress, and no

wheezing. Accordingly, we discern no error with the ALJ's treatment of this medical opinion, whose extreme limitations drew virtually no support from the clinical record.

Mertz also argues that the ALJ should have found her *per se* disabled at Step 3 because she meets listing 3.02. This listing evaluates respiratory disorders, such as COPD. 20 C.F.R. Part 404, Subpart P, App'x 1, Listing 3.02. When considering this listing, the regulations contemplate the use of the highest $FEV_1$ value to evaluate a respiratory disorder under 3.02A, and the highest FVC value to evaluate a respiratory disorder under 3.02B. To meet listing 3.02A, the testing must demonstrate an "$FEV_1$ less than or equal to the value in Table I-A or I-B for your age, gender, and height without shoes." Id., Listing 3.02A. To meet listing 3.02B, a claimant must demonstrate an "FVC less than or equal to the value in Table II-A or II-B for your age, gender, and height without shoes." Id., Listing 3.02B.

In the instant case, the ALJ found that Mertz did not meet the requirements for listing 3.02. The ALJ explained that the record did not contain $FEV_1$ or FVC values less than or equal to the values specified in the listing. (Tr. 13). Mertz was 48 years old at the time of her alleged onset of disability, and she measured at 62 inches tall. Accordingly, in order to meeting listing 3.02A, Mertz's $FEV_1$ levels would have

had to be less than or equal to 1.15 L. In order to meeting listing 3.02B, her FVC levels would have to have been less than or equal to 1.40 L.

Mertz submitted the results of two pulmonary function tests—one in September of 2020 and one in March of 2021. She contends that because her September 2020 results showed an $FEV_1$ of 0.90, she meets listing 3.02A. However, this contention ignores the fact that Mertz's March 2021 pulmonary function test results showed $FEV_1$ and FVC levels above the required listing range. Indeed, in this March 2021 test, Mertz's best pre-bronchodilator $FEV_1$ levels were measured at 1.33 L and her post-bronchodilator levels measured at 1.67 L, well above the 1.15 L listing threshold. (Tr. 1343). Similarly, with respect to listing 3.02B, Mertz's best FVC levels measured at 2.10 L and 2.36 L, which are well above the 1.40 L threshold in the listing. (Id.) Accordingly, given that a claimant "must meet *all* of the specified medical criteria" in order to meet a listing, Zebley, 493 U.S. at 531, we conclude that the ALJ's Step 3 finding that Mertz did not meet listing 3.02 is supported by substantial evidence. See e.g., Cowley v. Comm'r of Soc. Sec., 2017 WL 4548265, at *7 (D.N.J. Oct. 12, 2017) (affirming the ALJ's Step 3 finding where the record included multiple pulmonary function tests that showed the plaintiff's levels did not meet listing 3.02).

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED:     February 15, 2023